UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEWELL F.
O/B/O P.H.C.,

                Plaintiff,

v.                                                                                    CASE # 21-cv-00618

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

APPEARANCES:                                                            OF COUNSEL:

Law Offices of Kenneth Hiller, PPLC                    ELIZABETH A. HAUNGS, ESQ.
  Counsel for Plaintiff                                              KENNETH R. HILLER, ESQ.
6000 North Bailey Avenue
Suite 1A
Amherst, NY 14226


U.S. SOCIAL SECURITY ADMIN.                           KRISTINA D. COHN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative

record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.   RELEVANT BACKGROUND

### A.   Factual Background

P.H.C. was born on May 15, 2012 and was 6-years old at the time of his hearing. (Tr. 178). Generally, plaintiff alleges P.H.C.'s disability consists of hearing issues, eye issues, and attention deficit hyperactivity disorder (ADHD). (Tr. 200).

### B.   Procedural History

On March 25, 2019, plaintiff protectively filed an application for Supplemental Security Income ("SSI") on behalf of her minor son, P.H.C., under Title XVI of the Social Security Act (Tr. 178, 188). Plaintiff's application was initially denied, after which a timely request was made for a hearing before an Administrative Law Judge (ALJ). On May 13, 2020, plaintiff and P.H.C. appeared before ALJ Vincent Cascio. (Tr. 27-56). On July 1, 2020, ALJ Cascio issued a written decision finding P.H.C. not disabled under the Social Security Act. (Tr. 9-22). On April 8, 2021, the Appeals Council (AC) denied plaintiff's request for review. (Tr. 1-3). The ALJ's decision became the final decision of the Commissioner subject to judicial review under 42 U.S.C. § 405(g), incorporated for SSI by 42 U.S.C. § 1383(c)(3) and this action followed.

### C.   The ALJ's Decision

Generally, ALJ Cascio made the following findings of fact and conclusions of law:

> 1. The claimant was born on May 15, 2012. Therefore, he was a school-age child on March 25, 2019, the date application was filed, and is currently a school-age child. (20 CFR 416.926a(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity since March 25, 2019, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: ADHD, sensorineural hearing loss bilaterally, adjustment disorder with disturbance of conduct, developmental disorder of scholastic skills (unspecified), and sleep disorder (unspecified). (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).
(a) The claimant has less than a marked limitation in acquiring and using information.
(b) The claimant has less than a marked limitation in attending and completing tasks.
(c) The claimant has less than a marked limitation in interacting and relating with others.
(d) The claimant has no limitation in moving about and manipulating objects.
(e) The claimant has no limitation in the ability to care for himself/herself.
(f) The claimant has less than a marked limitation in health and physical well-being.

6. The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since March 25, 2019, the date the application was filed (20 CFR 416.924(a)).

(Tr. 9-22).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff argues the ALJ did not properly evaluate the testimony and subjective complaints of P.H.C.'s mother. (Dkt. No. 7 at 6 [Pl.'s Mem. of Law]).

### B. Defendant's Arguments

In response, defendant argues the ALJ properly evaluated P.H.C.'s symptomatology. (Dkt. No. 8 at 10 [Def.'s Mem. of Law]).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human*

*Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

To be "disabled" within the meaning of the Act, a child must show he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which either lasts or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I).

A three-step sequential evaluation process determines whether a supplemental security income claimant under the age of 18 is disabled. 20 C.F.R. § 416.924(a). At the first step, the ALJ determines whether the child has engaged in substantial gainful activity during the relevant period. 20 C.F.R. § 416.924(b). If so, the child is not disabled; if not, the evaluation continues to the next step. At the second step, the ALJ determines whether the child has a "severe" impairment, or combination of impairments – i.e., a slight abnormality or combination of slight abnormalities that causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If not, the ALJ denies the application; otherwise, the evaluation continues.

At step three of the sequential evaluation process, the ALJ determines whether a child's impairments meet, medically equal, or functionally equal the severity of one of the Commissioner's listed impairments (Listings). 20 C.F.R. §§ 416.924(a), (d). If not, the child is not disabled. 20 C.F.R. § 416.924(d). As part of the step three analysis, if the ALJ finds that a child's impairments do not meet or medically equal a listed impairment, the ALJ assesses all functional limitations using six "domains" of functioning to determine whether the child's symptoms are functionally equivalent to the listed impairments. 20 C.F.R. § 416.926a. The six domains of functioning include: (1) acquiring and using information; (2) attending and completing tasks; (3)

interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). The evaluation of age-appropriate functioning within each domain focuses on the child's abilities and limitations; where the child has difficulty; the quality of any limitations; and the kind, extent, and frequency of help that the child needs. 20 C.F.R. § 416.926a(b)(2). A finding of functional equivalence occurs when a child has an "extreme" limitation in one of the six domains of functioning or "marked" limitations in at least two domains. 20 C.F.R. § 416.926a(e).[1]

### IV. ANALYSIS

In evaluating whether a child is disabled under the Act, the ALJ must consider all evidence in the case record, including information from nonmedical sources, such as parents. *See* 20 C.F.R. § 416.924a(a)(2)(i). The ALJ identified allegations and statements by P.H.C.'s mother on function reports, her reports to doctors and evidentiary hearing testimony. (Tr. 16). However, he was not required to articulate under 20 C.F.R. § 416.920c(a)-(c) how he considered all the statements. *See* 20 C.F.R. § 416.920c(d) ("We are not required to articulate how we considered evidence from nonmedical sources . . . .").

As an initial matter, the plaintiff's brief makes the very broad argument that the testimony of P.H.C.'s mother supported greater limitations than assessed but does not identify what those limitations were or which domain(s) was/were affected by the purported error. (Dkt. No. 7 at 8). The Court is under no obligation to undertake that analysis on plaintiff's behalf. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument

---

[1] "Extreme" means a child has an impairment that very seriously interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e). "Marked" indicates that he or she has an impairment that seriously interferes with the ability for independently initiating, sustaining, or completing activities. *Id*.

in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). Absent more developed argument, remand is not warranted on this ground.

Plaintiff cites various parts of the testimony from P.H.C.'s mother while conceding she did testify there was improvement with medication. (Dkt. No. 7 at 8, *citing* Tr. 37). However, the ALJ permissibly discussed all the evidence of improvement on medication which was substantial evidence to support the assessed limitations in the functional domains. Regulations state the effect of medications are to be considered, including any evidence over time of how medication helps or does not help functioning compared to other children who do not have impairments. 20 C.F.R. § 416.924a(9); *See also* SSR 16-3p, 2017 WL 5180304, at *6 (October 25, 2017) (ALJ may consider a claimant's treatment in evaluating the intensity, persistence, and limiting effects of his symptoms). As appropriately referenced by the ALJ, treatment notes showed that P.H.C.'s ADHD symptoms improved when he began medication in February 2019. (Tr. 362, 365, 370, 376, 380). In July 2019, mental health services were declined by P.H.C.'s mother because she did not have any concerns at that time. (Tr. 757). P.H.C.'s mother informed consultative examiner Dr. Santarpia that since starting ADHD medication, the school reported that his difficulty sustaining attention, following through on instructions, and impulsive behavior had become more stabilized. (Tr. 395). Indeed, Dr. Santarpia's examination revealed P.H.C. could attend to, follow, and understand age-appropriate directions, sustain concentration and complete age-appropriate tasks, adequately maintain appropriate social behavior, respond appropriately to cognitive functioning, ask questions and request assistance in an age-appropriate manner, be aware of danger and take needed precautions, and interact adequately with peers and adults within normal limits. (Tr. 397-98).

Contrary to her testimony, P.H.C.'s mother also reported on a December 2019 assessment that P.H.C.'s classroom behavior had been disruptive, but his behavior was "good" since he had been on medication. (Tr. 468, 666). School records are consistent with improved behavior on medication and do not support greater limitations than assessed in the functional domains. In May 2020, P.H.C.'s classroom teacher Mr. Bailey and special education teacher, Mr. Muraco reported that "when [P.H.C.] is on his medication he has much success in the school setting. He is able to follow instructions, actively participate in small and large instructional groups, and complete work independently with minimal redirection from the teacher or aide." (Tr. 290). To be sure, plaintiff's mother also reported to the pediatrician that the teachers had observed improved behavior on medication. (Tr. 360, 362, 384). While plaintiff's mother testified he was in special education due to difficulties, there is no Individualized Education Plan in the record just the notation on the questionnaire that he is pulled out of regular education an hour a day and has push-in services. (Tr. 284). Regardless of the absence of this evidence, while there is a Functional Behavior Plan due to his disruptive behaviors, this was formulated prior to medication and the teacher questionnaire clearly indicates significant improvement with medication. (Tr. 300; 284-291).

In sum, the ALJ permissibly looked at the record as a whole at the time of the hearing and assessed the limitations in each functional domain. While P.H.C.'s mother testified to some limitations, the ALJ considered education records, teacher observations, medical records and other statements by her to medical professionals which is substantial evidence to support the assessed limitations. For the reasons discussed above, ALJ Cascio properly found that P.H.C.'s statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 17; 20 C.F.R. § 416.929).

**ACCORDINGLY,** it is

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 8) is **GRANTED.**

Dated: March 15, 2023  
Rochester, New York

_J. Gregory Wehrman_  
HON. J. Gregory Wehrman  
United States Magistrate Judge